**BURRIS, NISENBAUM, CURRY, & LACY LLP**
JOHN L. BURRIS, Esq. (SBN 69888)
BENJAMIN NISENBAUM, Esq. (SBN 222173)
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200
Facsimile: (510) 839-3882
john.burris@johnburrislaw.com
ben.nisenbaum@bncllaw.com

**BURRIS, NISENBAUM, CURRY, & LACY LLP**
DEWITT M. LACY, Esq. (SBN 258789)
JULIA N. QUESADA, Esq. (SBN 337872)
LENA P. ANDREWS, Esq. (SBN 342471)
9701 Wilshire Blvd., Suite 1000
Beverly Hills, California 90212
Telephone: (310) 601-7070
Facsimile: (510) 839-3882
dewitt@bncllaw.com
julia.quesada@bncllaw.com
lena.andrews@bncllaw.com

**THE LAW FIRM OF HENRY TANNER LLC**
HENRY W. TANNER, JR, Esq. (MO #66277)
1432 E. 49th Terrace
Kansas City, Missouri 64110
Telephone: (816) 547-2162
Facsimile: (816) 393-0338
henry@htannerlaw.com

Attorneys for Plaintiff,
TINA RICHARDSON
as successor-in-interest
to Decedent Caleb Slay

# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF MISSOURI

### SOUTHERN DIVISION

| | |
|---|---|
| TINA RICHARDSON, individually and as successor-in-interest to Decedent Caleb Slay, <br><br>                 Plaintiff, <br><br>vs. <br><br>UNITED STATES OF AMERICA; ANTHONY GASPERONI, individually and in his official capacity as an agent for the United States Drug Enforcement Administration; JOHN STUART, individually and in his official capacity as an agent for the United States Drug Enforcement Administration; DOES 1-20, inclusive, individually and in their official capacity as agents for the United States Drug Enforcement Administration; CITY OF SPRINGFIELD, a municipal entity; C. NUCCIO, individually and in his official capacity as sergeant for the Springfield Police Department; and DOES 21-40, inclusive, individually and in their official capacity as police officers for the Springfield Police Department, <br><br>                 Defendants. | CASE NO.: 6:23-cv-03337-RK <br><br>(*Honorable District Judge Roseann A. Ketchmark*) <br><br>**PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANT UNITED STATES' MOTION TO DISMISS** <br><br>Complaint Filed: October 31, 2023 |

**TO THE HONORABLE COURT AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

      Plaintiff, Tina Richardson (hereinafter "Plaintiff"), by and through her counsel of record, hereby submits the following Suggestions to the Court in Opposition to Defendant United States' Motion to Dismiss for Failure to State a Claim. These Suggestions in Opposition shall be based upon the Federal Rules of Civil Procedure, West District of Missouri Local Rules, and the Orders of this Court. These Suggestions in Opposition are further based upon the attached Memorandum of Points and Authorities; upon the records and files in this action; and upon such further evidence and argument as may be presented prior to or at the time of hearing the motion.

Dated: April 1, 2024    **BURRIS NISENBAUM CURRY & LACY**

                                  */s/ Julia N. Quesada*
                                  John L. Burris
                                  Ben Nisenbaum
                                  DeWitt M. Lacy
                                  Julia N. Quesada
                                  Lena P. Andrews

                                  Attorneys for Plaintiff,
                                  Tina Richardson

## TABLE OF CONTENTS

**INTRODUCTION** …………………………………………………………………,…...….. 7

**STATEMENT OF FACTS** ……………………………………………………………..,,…… 8

**ARGUMENT** ………………………………………………………………………………..….. 10

**I.    STANDARD OF REVIEW** …………………………………………..………… 10

**II.   PLAINTIFF'S ASSUALT AND BATTERY CLAIMS AGAINST DEFENDANT AGENTS SURVIVE**……………………………………………..….11

    A.   <u>**Plaintiff Properly Claims Assault Against Defendants Stuart and Gasperoni**</u> ……………………………………………….…… 11

    B.   <u>**Plaintiff Properly Claims Battery Against Defendants Stuart and Gasperoni**</u> ……………………………………………………….. 12

        *1. Defendant Stuart Committed Battery Against Decedent* ………………..………12

        *2. Defendant Gasperoni Committed Battery Against Decedent* ……….…….……13

**III.  PLAINTIFF'S' NEGLIGENCE CLAIMS MUST SURVIVE** ……………………..13

    A.   <u>**The Public Duty Doctrine is Inapplicable**</u> ……………………………….…...14

    B.   <u>**Plaintiff Sufficiently Claims Negligence for Pre-Arrest Tactics**</u>…...………..16

    C.   <u>**Plaintiff Sufficiently Claims Failure to Intervene Against Defendant Stuart**</u>………………………………………………………….…17

**IV.   PLAINTIFF'S STATE LAW TORT CLAIMS AGAINST THE UNITED STATES UNDER THE FEDERAL TORT CLAIMS ACT ARE CONTINGENT ON CERTIFICATION OF DEFENDANT AGENTS AND THEREBY SURVIVES**…………………………………………....18

**V.    PLAINTIFF REQUESTS LEAVE TO AMEND** ………………………………….19

**CONCLUSION** ……………………………………………………………………………..… 20

# TABLE OF AUTHORITIES

*Cases*

*Anderson v. Creighton*, 483 U.S. 635, 641 (1987)……………………………………………………. 11

*Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ........................................................................9, 10

*Bachmann v. Welby*, 860 S.W.2d 31, 33 (Mo. App. E.D. 1993) ………………..,………….. 15

*Baker v. Guzon*, 950 S.W.2d 635, 644 (Mo. Ct. App. 1997)…………………………………. 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)…………………………………………..10

*Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971)…………………………………. 7

*Board of Regents v. Roth*, 408 U.S. 564, 570-71 (1972)…………………………………………11

*Boswell v. County of Sherburne*, 849 F.2d 1117, 1120 (8th Cir.1988)……………………………10

*Coggins v. Laclede Gas Co.,* 37 S.W.3d 335, 339 (Mo. Ct. App. 2000)…………………………14

*Davis v. Lambert–St. Louis Int'l Airport*, 193 S.W.3d 760, 765 (Mo. banc 2006)……………… 19

*DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 195 (1989)……….11, 13

*Devitre v. Orthopedic Ctr. Of St. Louis, LLC*, 349 S.W.3d 327 (Mo. 2011)……………………11

*Estelle v. Gamble*, 429 U.S. 97, 103 (1976)…………………………………………………….. 13

*Foman v. Davis*, 371 US 178, 182 (1962). ……………………………………………………….19

*Green v. Denison*, 738 S.W.2d 861, 865 (Mo. banc 1987)……………………………………… 14

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)……………………………………………….10

*Hope v. Pelzer,* 536 U.S. 730, 739 (2002). ……………………………………………….…10, 12

*Howard v. Kansas City Police Dept.*, 570 F.3d 984, 988 (8th Cir. 2009)……………………… 11

*Ingraham v. Wright*, 430 U.S. 651, 672 (1977)…………………………………..…………….. 11

*Jackson v. Wilson*, 581 S.W.2d 39, 43 (Mo.App.W.D.1979) …………………………..,……….. 15

*Johnson v. Jones*, 515 U.S. 304, 313 (1995)……………………………………………………. 11

*K.H. through Murphy v. Morgan*, 914 F.2d 846 (7th Cir. 1990)…………………………………. 12

*Kivland v. Columbia Orthopaedic Grp.*, LLP, 331 S.W.3d 299, 306 (Mo. banc 2011)……….. 14

*Lyons v. Xenia*, 417 F.3d 565, 582 (6th Cir. 2005) ……………………………………………. 11

*Miller v. Smith*, 921 S.W.2d 39, 43 (W.D. Mo. Ct. App. 1996). ……………………….. 13, 14, 16

*Mitchell v. Kirchemie*r, 28 F.4th 888 (8th Cir. 2022)………………………………………….. 10

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) …………………………………………………..10

*Rustici v. Weidemeyer*, 673 S.W.2d 762, 769 (Mo. banc 1984) ………………..,………….. 15

*Schooler v. Arrington*, 106 Mo.App. 607, 611 (1904)…………………………………………... 15

*Selimanovic v. Finney*, 337 S.W.3d 30, 37 (Mo. Ct. App. 2011)………………………………….. 14
*Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008)……………………. 14, 15
*State v. Edwards*, 337 S.W.3d 118, 121 (Mo. Ct. App. 2011)……………………………………….12, 15
*State ex rel. Twiehaus v. Adolf,* 706 S.W.2d 443, 445 (Mo. banc 1986)…………………………. 16
*Sullivan v. Carlisle*, 851 S.W.2d 510, 516 (Mo. banc 1993)…………………………………………. 13
*Watson v. Tenet Healthsystem SL, Inc.,* 304 S.W.3d 236, 240 (Mo. Ct. App. 2009)……………. 14
*White v. United States*, No. 4:15CV1252 SNLJ, 2019 WL 1426292 (E.D. Mo. 2019)…………15

**Statutes**

42 U.S.C. § 1983……………………………………………………………………………………… 7, 10
Fed. R. Civ. P. 15(a)……………………………………………………………………………….... 19, 20
Fed. R. Civ. P. 12(b)(6)……………………………………………………………………………… 9
Mo. Rev. Stat. § 537.080………………………………………………………………………………..8, 9

**PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANT UNITED STATES' MOTION TO DISMISS**

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

This civil rights action against the United States of America (hereinafter "Defendant US"), DEA Agents Anthony Gasperoni and John Stuart (hereinafter collectively "Defendant Agents"), and DOES 1 through 20 (hereinafter collectively "Federal Defendants"), and the City of Springfield, Sergent C. Nuccio, and DOES 21 through 40 (hereinafter collectively "City Defendants"), was brought pursuant to violations of Title 42 U.S.C §§ 1983, and 1988; the Fourth and Fourteenth Amendments to the United States Constitution; Title 28 U.S.C. § 2671, Federal Torts Claims Act; *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971); Wrongful Death under Missouri Revised Statute § 537.080; and under the common law of Missouri. The claims arise from the egregious shooting and killing of Decedent Caleb Slay by DEA Agent Anthony Gasperoni, as well as the actions and omissions by DEA Agent John Stuart, and Springfield Police Sergeant C. Nuccio, on November 2, 2020. Decedent Caleb is survived by his mother, Tina Richardson.

It is undisputed that all parties to this action have been properly served with summons. It is also undisputed that all parties have filed responsive pleadings and participated in the Rule 26(f) Conference on March 15, 2024. Currently pending before the Court are: City Defendants' Motion to Dismiss (ECF No. 16); Defendant United States' Motion to Substitute as Party-Defendant (ECF No. 28); Defendant US' Motion to Dismiss for Failure to State a Claim (ECF No. 33); Defendant Agents' Motion to Dismiss for Failure to State a Claim (ECF No. 35); and Defendant Agents' Motion to Stay Discovery Pending Final Adjudication of Qualified Immunity Threshold Defense (ECF No. 37). Plaintiff filed Suggestions in Opposition to City Defendants' Motion to Dismiss (ECF No. 19); Plaintiff's Suggestions in Opposition to Defendant US' Motion to Substitute as Party-Defendant (ECF No. 32); and Plaintiff's Suggestions in Opposition to Defendant Agents' Motion to Stay Discovery Pending Final Adjudication of Qualified Immunity Threshold Defense (ECF No. 40).

Presently before the Court are Plaintiff's Suggestions in Opposition to Defendant US' Motion to Dismiss for Failure to State Claim, and Plaintiff's Suggestions in Opposition to Defendant Agents' Motion to Dismiss for Failure to State a Claim filed concurrently herewith. Defendant US now seeks to move the Court to Dismiss Plaintiff's Complaint for a myriad of reasons, including, Plaintiff's failure to state a claim, and other improper or incomplete interpretations of case law not attributable to, or binding on, the practices of the 8th Circuit.

Plaintiff submits that the related state common law intentional torts and negligence, and statutory violations for wrongful death pursuant to Missouri Revised Statute section 537.080, are properly plead against Defendants US, Gasperoni, and Stuart, because of the negligent tactics and infliction of deadly force against Decedent. Further, whether the acts and omissions of Defendants Gasperoni and Stuart were committed within the scope of their employment as federal DEA agents is a disputed question of material fact. Notwithstanding the certification of Defendant Agents currently under judicial review, Defendant US may still liable under the Federal Tort Claims Act for the actions and inactions of Defendant Agents to the extent their actions and inactions were done under the color of federal of law.

To this end, Plaintiff urges that any defects in pleading can easily be remedied by amending the Complaint. As such, this Court should deny City Defendants' Motion to Dismiss or, in the alternative, grant Plaintiff leave to amend the Complaint.

## STATEMENT OF FACTS

The facts giving rise to this action are set forth in Plaintiff's Complaint filed with this Court on October 31, 2023. (See generally Dkt. No. 1) (See also Declaration of Julia N. Quesada (hereinafter "Quesada Decl."), ¶ 2). In the late afternoon on November 2, 2020, Decedent Caleb Slay (hereinafter "Decedent Caleb") was parked out front of his home in Springfield, Missouri, when two unmarked DEA vehicles pulled up and parked in front of his house. *Id.* The two DEA Agents, Anthony Gasperoni and John Stuart, were surveilling the area. *Id.*

As Decedent Caleb began walking up his driveway to the front door of his house, Defendant Gasperoni ordered Decedent Caleb to stop, and Decedent Caleb complied. (Quesada

**PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANT UNITED STATES' MOTION TO DISMISS**

Decl. ¶ 3). Decedent Caleb informed Defendant Gasperoni of his legal firearm, then slowly extended both hands out in front of his body showing Defendant Gasperoni that he was not holding any weapon and did not pose any threat. *Id.*

During this interaction, Defendant Gasperoni took hold of Decedent Caleb's wrists while Defendant Stuart approached from behind without any warning. (Quesada Decl. ¶ 4). Defendant Stuart grabbed Caleb and one of the Defendant Agents, and Decedent Caleb, fell to the ground. *Id.* While the Defendant Agent and Decedent Caleb were on the ground, Defendant Gasperoni deployed his taser against Decedent Caleb's neck. *Id.* Defendant Gasperoni then took out his firearm and without warning fired at least three bullets at Decedent Caleb, striking Decedent Caleb in the head twice. *Id.*

Springfield Police Officers were dispatched to the scene after reports of shots fired. (Quesada Decl. ¶ 5). Springfield Police Department Sergeant, C. Nuccio (hereinafter "Defendant Nuccio") was one of the first officers on scene after the shooting. *Id.*

Defendant Nuccio approached Decedent Caleb who was visibly bleeding from the head and severely injured. (Quesada Decl. ¶ 6). Defendant Nuccio made the determination that Decedent Caleb did not have a pulse and did not require immediate medical attention. *Id.* Consequently, Defendant Nuccio prevented emergency medical responders from immediately rendering aid and life saving measures to Decedent Caleb. *Id.* Emergency medical personnel were permitted to tend to Decedent Caleb several minutes later and, contrary to Defendant Nuccio's initial determination, a low pulse was found. *Id.* Decedent Caleb succumbed to injuries and died in his front yard. *Id.*

Defendant Gasperoni works in conjunction with the Springfield Police Department ("SPD") and has an assigned credential number (# 503951) and badge number. (Quesada Decl. ¶ 7, Ex. A at 3). At the time of this encounter, Defendants Gasperoni and Stuart were assisting a local law enforcement task force. (Quesada Decl. ¶ 7, Ex. A at 3) (Quesada Decl. ¶ 8, Ex. B at 3). Defendants Gasperoni's and Stuart's involvement were initiated by City of Springfield Task Force Officer, Nick Mittag ("TFO Mittag"). *Id.* TFO Mittag contacted Defendants Gasperoni and Stuart

for assistance with mobile surveillance. *Id.* Defendants Gasperoni and Stuart were surveilling a red car in a Wal-Mart parking lot for several minutes before they followed the car to a residential street where Decedent Caleb lived. (Quesada Decl. ⁋ 7, Ex. A) (Quesada Decl. ⁋ 8, Ex. B). When Defendants Gasperoni and Stuart made contact with the drivers of the subject cars, Defendant Stuart announced "police" as he approached and was wearing a vest that said "police" on it. (Quesada Decl. ⁋ 8, Ex. B at 10-12). Defendants Gasperoni and Stuart were wearing plain clothes at the time of the incident, they were assisting SPD Task Force doing local law enforcement functions. *Id.*

## ARGUMENT

### I.  STANDARD OF REVIEW

A motion under Rule 12(b)(6) tests the legal sufficiency of the claims stated in the complaint. To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Specifically, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A complaint's nonconclusory allegations, accepted as true, make it not just 'conceivable' but 'plausible' that the defendant is liable." *Mitchell v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 680-83 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678.

Here, Defendant US challenges Plaintiff's Fifth Cause of Action (Federal Tort Claims Act), Sixth Cause of Action (Wrongful Death Negligence), Eighth Cause of Action (Intentional Infliction of Emotional Distress), and Ninth Cause of Action (Negligence) and part of Plaintiff's Seventh Cause of Action (Assault/Battery). (ECF No. 34 at *1). Plaintiff maintains that the basis of Defendant US' Motion to Dismiss rests entirely on disputed questions of material facts, which are premature to be determined at the pleading stage. Thus, to the extent Defendant US attempts

**PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANT UNITED STATES' MOTION TO DISMISS**

to dismiss the Plaintiff's claims against Defendants Gasperoni and Stuart based on judicially created, as well as state-based immunities, requires a determination of facts that are material and in dispute, and should not apply at this early stage of pleading.

Furthermore, any defect in the Complaint can be remedied by an amendment to the pleading. Thus, Defendants' Motion to Dismiss Plaintiff's Complaint should be denied, or in the alternative, Plaintiff should be given leave to amend.

## II.  PLAINTIFF'S ASSAULT AND BATTERY CLAIMS AGAINST DEFENDANT AGENTS SURVIVE

Defendant US argues that Plaintiff fails to state claims of Assault and Battery against Defendant Stuart. Defendant US also argues that Plaintiff's claim for Intentional Infliction of Emotional Distress against Defendant Agents. Plaintiff concedes that Plaintiff's claim Intentional Infliction of Emotional Distress is actionable under Plaintiff's claims for Assault and Battery. Plaintiff maintains that any defect in pleading can be cured by amendment.

### A.  **Plaintiff Properly Claims Assault Against Defendants Stuart and Gasperoni**

To establish a claim for Assault, Plaintiff must allege "(1) intent to cause bodily harm or offensive contact, or apprehension of either; (2) conduct of the defendant indicating such intent, [or] (3) apprehension of bodily harm or offensive contact on the part of the plaintiff caused by defendant's conduct." *Devitre v. Orthopedic Ctr. of St. Louis, LLC*, 349 S.W.3d 327, 335 (Mo. 2011).

Here, Defendant US does not specifically argue that Plaintiff failed to state a claim for assault against Defendants Stuart and Gasperoni. To the extent that a claim for Assault should be plead as an independent cause of action from battery under Missouri common law, Plaintiff maintains that claims for Assault against Defendant Agents can be established and any defect in pleading can be cured by amendment.

Accepting the allegations of Plaintiff's Complaint as true, Defendant Agents intended to cause Decedent bodily harm or offensive contact, or apprehension of bodily harm or offensive contact, and the Defendant Agents' conduct indicated such intent, or indicated apprehension of

bodily harm or offensive contact on the part of the plaintiff caused by defendant's conduct. Decedent was on his own property and had not committed any crime when Defendant Stuart approached Decedent from behind while Decedent was engaging with Defendant Gasperoni. Decedent had not made any threats prior to Defendant Stuart grabbing onto Decedent's person and Defendant Gasperoni grabbing hold of Decedent's wrists. Decedent was knocked to the ground when Defendant Gasperoni proceeded to deploy his taser into Decedent's neck. If accepted as true, Decedent experienced neuromuscular incapacitation when Defendant Gasperoni used his firearm to shoot Decedent three times in the head at close range. As such, Plaintiff properly states facts to establish claims for Assault against both Defendant Agents. Accordingly, Plaintiff should be granted leave to amend should any defect be determined.

### B. Plaintiff Properly Claims Battery Against Defendant Stuart and Gasperoni

Defendant US argues that Plaintiff fails to state a claim for battery because she fails to allege an "intended, offensive bodily contact with another person." *Devitre*, 349 S.W.3d at 334. Conversely, Plaintiff contends that a battery claim is properly stated against both Defendants Stuart and Gasperoni.

*1. Defendant Stuart Committed Battery Against Decedent*

Defendant US' assertion that Plaintiff fails to state facts that Defendant Stuart intended to cause offensive bodily contact with Decedent because only Defendant Gasperoni is alleged to have tasered and shot Decedent is unavailing. Conversely, Plaintiff contends that Defendant Stuart intended offensive bodily contact with Decedent when Defendant Stuart forcibly grabbed onto Decedent's person during the encounter. At the time Defendant Stuart grabbed onto Decedent, Decedent had posed no threat of harm to either Defendant Stuart, Gasperoni, or any other person. Decedent did not consent to the touching and did not exhibit any conduct warranting a show of force by either Defendant. As such, it is immaterial that Defendant Stuart was not alleged to have used his taser and firearm against Decedent for purposes of Plaintiff's battery claim. Defendant Stuart grabbing Plaintiff without justification is intended offensive touching. Plaintiff has thus properly stated a claim for battery against Defendant Stuart. Defendant US' Motion to Dismiss

Plaintiff's Battery Claim against Defendant Stuart should thereby be denied, or in the alternative, Plaintiff should be granted leave to amend.

*2. Defendant Gasperoni Committed Battery Against Decedent*

It is undisputed that Defendant Gasperoni grabbed onto Decedent's wrists, deployed his taser against Decedent's neck, and shot Decedent three times executioner style. Such actions undeniably constitute intended offensive touching of Decedent's person. Accepting the factual allegations in the Complaint as true, Decedent was on his own property and had committed no crime when Defendant Gasperoni initiated contact and escalated the encounter. Decedent had not threatened any officer or other person and was not observed committing a crime when Defendant Gasperoni grabbed hold of Decedent's wrists, tasered Decedent the neck, and shot Decedent three times in the head. Because such actions are sufficient to establish an intended offensive touching of Decedent, Plaintiff's Battery claim against Defendant Gasperoni must survive, or in the alternative, Plaintiff should be granted leave to amend.

## III. PLAINTIFF'S NEGLIGENCE CLAIMS MUST SURVIVE

Missouri's wrongful death statute creates a statutory cause of action unrecognized at common law. *Sullivan v. Carlisle*, 851 S.W.2d 510, 516 (Mo. banc 1993). A claim for wrongful death "is neither a transmitted right nor a survival right, but is created and vests in the survivors at the moment of death." *Sullivan v. Carlisle*, 851 S.W.2d 510, 515 (Mo. banc 1993). "Under Missouri's wrongful death statute, the right to sue for wrongful death is conditioned on the fact that the decedent could have maintained an action for damages for the injuries sustained had he or she survived." *Selimanovic v. Finney*, 337 S.W.3d 30, 37 (Mo. Ct. App. 2011) (internal quotations omitted). "As stated by the General Assembly in § 537.080, R.S.Mo.1986, contains no exemptions, exceptions or limitations based on employment status, on the right of a wrongful death statutory beneficiary to file suit against a tortfeasor." *Miller v. Smith*, 921 S.W.2d 39, 43 (W.D. Mo. Ct. App. 1996).

Moreover, the element of causation in a wrongful death action, a plaintiff must prove that "but for" the defendant's actions or omissions, the decedent would not have died. *Watson v. Tenet*

*Healthsystem SL, Inc.*, 304 S.W.3d 236, 240 (Mo. Ct. App. 2009); *Baker v. Guzon*, 950 S.W.2d 635, 644 (Mo. Ct. App. 1997). In other words, a plaintiff must show that the defendant's conduct directly caused or directly contributed to cause the decedent's death. *Kivland v. Columbia Orthopaedic Grp.*, LLP, 331 S.W.3d 299, 306 (Mo. banc 2011). Conduct by the Defendant "need not be the sole cause of the decedent's death, but simply a cause or a contributing cause." *Coggins v. Laclede Gas Co.,* 37 S.W.3d 335, 339 (Mo. Ct. App. 2000).

Here, Defendant US argues that Plaintiff's negligence claims should be dismissed under the Missouri Public Duty Doctrine. Defendant US further argues that Defendant Gasperoni's use of the taser and infliction of deadly force cannot be the basis for the negligence claims because Defendant Gasperoni's taser deployment and firearm discharge were intentional acts. Conversely, Plaintiff maintains that the public duty doctrine does not apply here and the allegations in the Complaint, if accepted as true, are sufficient to establish negligent pre-arrest tactics by both Defendant Agents. Defendant US' contentions are therefore unavailing nor applicable to the case at bar. Defendant US also argues that Plaintiff's claim for failure to supervise fails as to the Defendant Agents, which Plaintiff concedes and thereby does not oppose here.

**A. <u>The Public Duty Doctrine is Inapplicable</u>**

"The public duty doctrine provides immunity to public employees for duties owed to the general public." *Miller v. Smith*, 921 S.W.2d 39, 44 (W.D. Mo. Ct. App. 1996) (quoting *State ex rel. Barthelette v. Sanders*, 756 S.W.2d 536, 538 (Mo. banc 1988)). The doctrine "does not insulate a public employee from all liability, as he could still be found liable for breach of ministerial duties in which an injured party had a special, direct, and distinctive interest" (internal quotations omitted). *Southers v. City of Farmington*, 263 S.W.3d at 611-12; (quoting *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 445 (Mo. banc 1986) (internal citations omitted). Moreover, "the protections of the public duty doctrine are not intended to be limitless, and, just as the doctrine of official immunity will not apply to conduct that is willfully wrong or done with malice or corruption." *Id.* "The public duty doctrine states that a public employee is not civilly liable for the breach of a duty owed to the general public, rather than a particular individual." *Southers v. City of*

**PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANT UNITED STATES' MOTION TO DISMISS**

*Farmington*, 263 S.W.3d 603, 611 (Mo. 2008); *see generally* 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . .)." The public duty doctrine "delineates the legal duty the defendant public employee owes the plaintiff." *Id.* at 612. Application of the doctrine "negates the duty element required to prove negligence, such that there can be no cause of action for injuries sustained as the result of an alleged breach of public duty to the community as a whole." *Id.* For the public duty doctrine to apply, a public official "must be engaged in some particular duty of his office or employment which . . . calls for his professional expertise and judgment." *Brown v. Tate*, 888 S.W.2d 413, 416 (Mo. Ct. App. 1994). "Enforcement of the law and keeping of the peace are duties [owed] to the general public but a breach of which is not actionable by a citizen." *White v. United States*, No. 4:15CV1252 SNLJ, 2019 WL 1426292, at *12 (E.D. Mo. Mar. 29, 2019) (quoting *Berger v. City of Univ. City*, 676 S.W.2d 39, 41 (Mo. Ct. App. 1984)).

Here, Defendant US argues that the Public Duty Doctrine applies in the case at bar because Defendant Agents owed no duty to Decedent but rather to the public. Defendant US unpersuasively attempts to analogize *White*, where a Special Agent for the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF Agent") fired his gun at a moving vehicle and the gunfire struck and killed the passenger. 2019 WL 1426292, at *12. The court in *White*, which Defendant US argues is appliable here, cites to various Missouri Supreme Court cases that held the public duty doctrine protects officers who unintentionally shot bystanders during an arrest and that the police officers did not owe a duty to the individuals who were hit by stray bullets. (ECF No. 34 at *10-11); *see also White*, 2019 WL 1426292, at *12. Just as *White* does not apply to the case at bar, neither do the string of cases Defendant US cites to in its present Motion. (See ECF No. 34 at 11.)

In contrast to the cases cited by Defendant US, there is no allegation in Plaintiff's Complaint that Defendants Gasperoni and Stuart unintentionally struck bystanders with gunfire. If the allegations in the Complaint are accepted as true, Plaintiff unequivocally states that Defendants Stuart and Gasperoni intentionally contacted Decedent without justification. Decedent had not

committed a crime and was on his own property. Decedent never threatened any officer or other when Defendant Agents made physical contact with Decedent's person. Although Defendant Agents' physical contact with Decedent was intentional – that is, Defendant Stuart grabbing onto Decedent and Defendant Gasperoni grabbing Decedent's wrists, tasering him in the neck, and shooting him three times in the head – the Defendant Agents failed to adequately evaluate the circumstances they were confronted with. Decedent was not committing any crime, did not act violently or threaten any officer or other when Defendant Gasperoni initiated the encounter, and Decedent openly notified Defendant Agents that he was in lawful possession of firearm. The public duty doctrine does not apply because Decedent was the intended target of Defendant Agents' investigation and was on his private property when Defendant Agents made contact. Defendant Agents were negligent in their pre-arrest tactics but deliberately exercised force against Decedent causing him physical harm and eventually death. Thus, Defendant US' public duty doctrine argument fails.

Accordingly, Defendant US' Motion to Dismiss should be denied as to this point, or in the alternative, Plaintiff should be granted leave to amend the Complaint and cure any deficiencies.

### B. Plaintiff Sufficiently Claims Negligence for Pre-Arrest Tactics

As stated supra, Defendant Agents' pre-arrest tactics prior to the use of physical force were negligent. If accepted as true, Defendant Agents failed to take appropriate actions when they first contacted Decedent. Decedent was compliant with Defendant Gasperoni's command to stop and talk to him. Decedent was not committing a crime nor was Decedent acting violently toward officers or others. Further, Decedent was transparent and forthcoming with Defendant Agents that he was in lawful possession of a firearm. Nevertheless, Defendant Agents used physical force to seize Decedent by grabbing his body and wrists, tasering him in the neck, and shooting him in the head three times despite Decedent experiencing neuromuscular incapacitation from the taser at the time shots were fired. Neither Defendant Agent intervened to prevent unreasonable force from being used against Decedent. Decedent suffered a loss of life as a result. As such, Defendant US'

argument on this point fails. Therefore, Defendant US' Motion should be denied, or alternatively, Plaintiff should be granted leave to amend.

### C. **Plaintiff Sufficiently Claims Failure to Intervene Against Defendant Stuart**

Defendant Stuart can be held liable under a theory of bystander liability for failure to intervene because the excessive and unreasonable use of deadly force against Decedent took place in Defendant Stuart's presence, where he had a realistic opportunity to prevent the harm, and he reasonably should have known that Decedent's rights were being violated. See *Campbell v. City of Yonkers*, 2020 WL 5548784, at *10 (S.D.N.Y. Sept. 16, 2020) (holding that a failure-to-intervene claim does not state a separate constitutional violation but is instead an alternate theory of liability for the alleged use of excessive force.) On that basis, the court rejected an argument that the plaintiff's failure-to-intervene claims presented *Bivens* in a new context. *Id.* Likewise in this case, there is a direct link between Defendant Stuart's failure to intervene and Decedent's death and Plaintiff's resulting injury.

If the allegations in the Complaint are accepted as true, Defendant Stuart was present when Defendant Gasperoni contacted Decedent on his property. Defendant Stuart observed Defendant Gasperoni taser Decedent in the neck. Defendant Stuart further observed Decedent exhibit neuromuscular incapacitation and immediately thereafter, Defendant Stuart observed Defendant Gasperoni shoot Decedent in the head three times executioner style. At no point did Defendant Stuart intervene when Defendant Gasperoni tasered Decedent in the neck, nor did Defendant Stuart intervene when Defendant Gasperoni shot Decedent in the head three times while experiencing neuromuscular incapacitation. Decedent was not threatening officers or others when force was inflicted. Decedent was temporarily incapacitated when the taser was deployed and before lethal force was used. Nonetheless, Defendant Stuart never attempted to intervene to prevent violations against Decedent which he fully observed.

Therefore, Defendants US' Motion to Dismiss on this point should be denied, or in the alternative, Plaintiff should be granted leave to amend to cure any deficiencies this Court determines.

PG. 17         Case No.: 6:23-cv-03337-RK
**PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANT UNITED STATES' MOTION TO DISMISS**

## IV. PLAINTIFF'S STATE LAW TORT CLAIMS AGAINST THE UNITED STATES UNDER THE FEDERAL TORT CLAIMS ACT ARE CONTINGENT ON CERTIFICATION OF DEFENDANT AGENTS AND THEREBY SURVIVES

The Federal Tort Claims Act ("FTCA") waives the United States' sovereign immunity as to certain tort claims which arise due to the "negligent or wrongful act or omission of any employee . . . under circumstances where the United States if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1) (emphasis added). Under the FTCA, sovereign immunity is waived in circumstances where the United States would be liable if it were a private person. See *Howard v. United States*, 964 F.3d 712, 716 (8th Cir. 2020).

A court therefore "look[s] to the state-law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA 'in the performance of activities which private persons do not perform.'" *United States v. Olson*, 546 U.S. 43, 46 (2005). Missouri substantive law therefore governs Plaintiff's tort claims against the United States. *Howard,* 964 F.3d at 716.

As Defendant US points out in its Motion (ECF No. 34 at *2), Defendant US moved to substitute as party-defendant for Plaintiff's tort claims against Defendant Agents to the extent that Defendant Agents were acting under the color of federal law. Plaintiff objected to the certification arguing there is a genuine dispute of material fact as to whether Defendants Gasperoni and Stuart were acting within the scope of their employment with the DEA and under color of federal law. (See ECF No. 32 at *8.) Specifically, Defendants Gasperoni and Stuart were both called by a Springfield Task Force Officer, TFO Mittag. Defendants Gasperoni and Stuart were surveilling a red car as part of the mobile surveillance initiated by the local police department task force. Neither Defendant Gasperoni, nor Defendant Stuart encountered Decedent Caleb while out on assignment for the DEA, they were assisting local law enforcement. Moreover, Defendant Gasperoni, although a DEA agent, works with the Springfield Police Department and operates under an assigned credential number and badge number. Similarly, Defendant Stuart was wearing a body vest that

was marked as "police" and further announced himself as "police" during the encounter. There remain questions of fact as to whether the acts and omissions of Defendants Gasperoni and Stuart were acting within their scope of employment with the DEA at the time they encountered Decedent Caleb and exercised lethal force. Thus, Plaintiff objects to the certification of Defendant Agents as federal actors and acted under color of federal law during the lethal encounter with Decedent because there are several questions of material fact as to what authority and capacity Defendant Agents were engaged in when Defendant Agents used force, including deadly force, against Decedent.

Notwithstanding Plaintiff's objection to the certification of Defendant Agents, Plaintiff contends that a separate cause of action against the United States under the FTCA for the intentional torts of assault and battery and negligence claims against Defendant Agents are proper if Defendant Agents' certification is upheld. In the circumstance that Defendant Agents' certifications are upheld, Plaintiff's assault, battery, and negligence claims against Defendant Agents are properly alleged against Defendant US under the FTCA. Because the Certification has not yet been established, Plaintiff's separate cause of action under the FTCA against Defendant US for the assault, battery, and negligence claims against Defendant Agents is appropriate.

Therefore, Defendants US' Motion to Dismiss on this point should be denied, or in the alternative, Plaintiff should be granted leave to amend to cure any deficiencies this Court determines.

## V. PLAINTIFF REQUESTS LEAVE TO AMEND

Federal Rules of Civil Procedure, Rule 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Indeed, "leave to amend the pleadings is freely given unless the opposing party makes a showing of undue prejudice, or bad faith or dilatory motive on the part of the moving party." *Foman v. Davis*, 371 US 178, 182 (1962).

Here, Plaintiff submits that Defendant US' various attacks are to the form of the Complaint and not its substance. Moreover, Defendant US fails to accept the facts alleged in the Complaint as true for the purpose of this Motion. As discussed previously, perfection in pleading is not

required; however, in the interest of clearing up any confusion, Plaintiff seeks leave to amend the Complaint to cure any defects in the form of the pleading and to clear-up any confusion, eliminate any unintended claims alleged therein, and otherwise remedy any other pleading deficiencies this Court ascribes.

## CONCLUSION

Based on the foregoing, Defendant US' Motion to Dismiss Plaintiff's Complaint as to Plaintiff's Fifth, Sixth, Seventh, Eighth, and Ninth Causes of Action should be denied, or in the alternative, Plaintiff requests leave to amend.

Respectfully submitted,

Dated: April 1, 2024      **BURRIS NISENBAUM CURRY & LACY**

By: */s/ Julia N. Quesada*
      JOHN L. BURRIS
      BEN NISENBAUM
      DeWITT M. LACY
      JULIA N. QUESADA
      LENA P. ANDREWS

Attorneys for Plaintiff,
Tina Richardson