# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### SOUTHERN DIVISION

| | | |
|---|---|---|
| TINA RICHARDSON, Individually and as | ) | |
| Successor in Interest to Decedent Caleb Slay | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  6:23-cv-3337 |
| | ) | |
| UNITED STATES OF AMERICA, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY SUGGESTIONS IN SUPPORT OF AGENTS GASPERONI AND STUART'S MOTION TO DISMISS

In their opening motion, Defendants Agents Gasperoni and Stuart demonstrated that Plaintiff's § 1983 claims were inapplicable to them because the Agents were not state actors; that her Fourth Amendment claim against Agent Stuart extended *Bivens*[1] to a new context where special factors counseled hesitation; and that regardless, the Complaint's factual allegations failed to show that Agent Stuart committed a clearly established constitutional violation.

Plaintiff fails to grapple with any of this. Instead, her Opposition concedes that "the operative Complaint did not articulate specifically that Defendants Gasperoni or Stuart wielded state authority nor identify any relevant source of authority supporting Plaintiff's allegations that either Agent had an employment relationship with the State of Missouri," as is required to state a claim under § 1983. ECF No. 47 at 8. It further admits that "[in] addition to [various] alternative processes, this case presents other sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy," and thus that special factors preclude judicial recognition of Plaintiff's novel *Bivens* claim against Agent Stuart. ECF No. 47 at 11. Faced with these

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

deficiencies, Plaintiff does not even try to argue that her Complaint may proceed in its current form. *See* ECF No. 47 at 9, 14 (seeking leave to amend).

Yet despite her admissions and the acknowledged deficiency of her pleadings, Plaintiff contends that her § 1983 and *Bivens* claims "survive" because (1) extrinsic evidence somehow establishes that Drug Enforcement Administration (DEA) Agents are actually state officials, (2) no special factors preclude extension of *Bivens* to cover failure-to-intervene theories even though "Congress might doubt the efficacy or necessity of a damages remedy" for such claims, (3) purported questions of material fact prevent the Court from answering the purely legal question of whether Plaintiff has alleged a violation of clearly established law as to Agent Stuart, and (4) a single, distinguishable decision from the Eighth Circuit shows that Agent Stuart violated clearly established law.

Plaintiff is wrong for four reasons. First, none of the "evidence" Plaintiff purports to cite is properly before the Court at the pleading stage. Even if it were, it would be insufficient to create a material fact dispute about the Agents' federal employment and authority. Second, Plaintiff's *Bivens* argument is internally contradictory and inconsistent with controlling caselaw from the Supreme Court and Eighth Circuit. Third, Plaintiff's argument about fact disputes ignores controlling precedent from the Eighth Circuit, which holds that the issue of "whether certain actions violate clearly established law is the archetypal question of law." *Est. of Walker v. Wallace*, 881 F.3d 1056, 1060 (8th Cir. 2018). Finally, Plaintiff's reliance on a single, distinguishable Eighth Circuit opinion does not establish that Agent Stuart violated clearly established Fourth Amendment law.

## I. Plaintiff's Opposition Confirms that the Agents are Federal Actors.

Plaintiff's Opposition admits that her Complaint "did not articulate specifically that Defendants Gasperoni or Stuart wielded state authority nor identify any relevant source of authority supporting Plaintiff's allegations that either Agent had an employment relationship with the State of Missouri." ECF No. 47 at 8. That admission, especially when considered alongside her Complaint's repeated allegations that the DEA employed the Agents and they acted under the control and supervision of the United States, is more than sufficient to show the Agents are federal actors not subject to suit under § 1983. *See* ECF No. 1 at ¶ 11 ("Defendant U.S., by and through the United States Drug Enforcement Administration, is and was the employer of Defendant Gasperoni and Stuart."), ¶ 20 ("The United States . . . is being sued . . . for the acts and omissions of Defendants Gasperoni [and] Stuart . . . who at the time they caused Decedent's [Caleb Slay's] and Plaintiff's injuries and damages, were duly qualified and acting officers, employees, and/or agents of the United States Drug Enforcement Administration, and acting within the scope of their employment and/or agency."); *see also Haley v. Walker*, 751 F.2d 284, 285 (8th Cir. 1984) (Section 1983 "is inapplicable to persons acting under color of federal law").

Plaintiff's attempt to controvert the judicial admissions in her Complaint is to no avail. *See generally Knudsen v. United States*, 254 F.3d 747, 752 (8th Cir. 2001) ("[F]actual statements in a party's pleading are generally binding on that party unless the pleading is amended."). Although Plaintiff contends she has discovered "evidence showing that Defendant Agents acted under State authority," she concedes that none of this "evidence" was included in her Complaint, and "it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion

3

to dismiss." *Morgan Distributing Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989).

Nor would Plaintiff's supposed evidence create a fact dispute about the Agents' federal authority if the Court considered it. As an initial matter, Plaintiff's prior allegations about the Agents' federal employment are "judicial admissions" that are "generally binding on [a] party unless the pleading is amended." *Knudsen*, 254 F.3d at 752; ECF No. 1 ¶¶ 11, 20.  As such, they "do[] away with the need for evidence in regard to [their] subject matter," i.e., the Agents' federal employment. *Warner Bros. Ent., Inc. v. X One X Prods.*, 840 F.3d 971, 978 (8th Cir. 2016) (citations and quotations omitted). Thus, none of Plaintiff's supposedly contrary evidence is entitled to any weight on the scope of employment.

And finally, the United States' Reply in Support of its Motion for Substitution explains why none of that evidence gives rise to a fact dispute. *See* ECF No. 53, § III. The Agents expressly incorporate that explanation and all other arguments in the United States' Reply on Substitution (ECF No. 53) into this brief.[2]

## II. Plaintiff's Argument on *Bivens* Contradicts Controlling Caselaw and Itself.

Plaintiff further argues that this Court should expand the "disfavored" *Bivens* remedy because failure-to-intervene claims are not a new context. ECF No. 47 at 10; *see also Ziglar v.*

---

[2]      In response to Plaintiff's additional citations, the Agents note that *Williams v. United States* is inapposite. 341 U.S. 97 (1951). There, the Supreme Court held that a private citizen who "held a special police officer's card issued by the City of Miami, Florida, and had taken an oath" pursuant to "the policy of Miami, Florida," acted under color of state law, *id.* at 98-99, a far cry from the circumstances alleged here. And *Tongol v. Usery* undercuts Plaintiff's broader argument that the Agents somehow "assumed" state authority. 601 F.2d 1091 (9th Cir. 1979). *Tongol* held that state employees implementing federally funded programs act under state law because they derive their power to implement those programs from their state employment. *Id.* at 1097. But here, the Agents were federal, not state, employees, and any power they had to enforce laws derived from federal law.

*Abbasi*, 582 U.S. 120, 135 (2017). Yet at the same time, she concedes that "this case presents other 'sound reasons to think that Congress might doubt the efficacy or necessity of a damages remedy.'" ECF No. 47 at 11 (quoting *Abbasi*, 582 U.S. at 137)).

Regardless, the many differences the Agents identified between Plaintiff's failure-to-intervene claim and *Bivens*'s warrantless search claim mandate a finding of new context. At the outset, Plaintiff's Opposition fails to respond to the Agents' arguments that failure-to-intervene claims arise from a different kind of misconduct than excessive force claims, and also pose a greater risk of interference with Executive Branch activity. ECF No. 36 at 16-17 (citing *Farah v. Weyker*, 926 F.3d 492 (8th Cir. 2019)). Moreover, her suggestion that *Damiani v. Duffy*, an unpublished Third Circuit opinion that predates both *Egbert* and *Farah*, undercuts the Agents' argument that this case presents a different "mechanism of injury" is misplaced. *See* ECF No. 47 at 10 (citing 754 F. App'x 142, 147 (3d Cir. 2018)). The *Damiani* defendants never argued that the plaintiff lacked a *Bivens* cause of action, so it is hardly surprising that *Damiani* never reached the new context issue. *See Damiani*, 754 F. App'x at 142. *Damiani* is thus irrelevant.

Finally, Plaintiff's reliance on the Southern District of New York's decision in *Campbell v. City of Yonkers* is misplaced. Nos. 19 CV 2117 (VB), 19 CV 9444 (VB), 2020 WL 5548784 (S.D.N.Y. Sept. 16, 2020) ("*Campbell I*"). That case supports the Agents, not Plaintiff. Although *Campbell I* held that failure-to-intervene claims were not a new *Bivens* context, the court revisited its decision after *Egbert* and was "convinced the Supreme Court, if confronted with plaintiffs' claims, would find no cause of action under *Bivens*." *Campbell v. City of Yonkers,* Nos. 19 CV 2117 (VB), 19 CV 9444 (VB), 2023 WL 4867459, at *8 (S.D.N.Y. July 31, 2023) (*Campbell II*). *Campbell I* is thus no longer good law. Instead, *Campbell II* affirmatively *supports* the Agents' position that failure-to-intervene claims are a new context.

Moreover, Plaintiff concedes that this new context presents "other sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy in this case," and thus that special factors bar extension of the *Bivens* remedy to her novel claims. ECF No. 37 at 11 (quoting *Abbasi*, 582 U.S. at 137); *see also Egbert*, 596 U.S. at 492. Consequently, the Court need not dwell on the many compelling alternative remedies and special factors identified in the Agents' opening brief. *See* ECF No. 36 at 18-22.

Nonetheless, for the sake of completeness, the Agents note that Plaintiff's normative argument that the Court *should* find no alternative remedies in this case because "the federal court *should be* the only remedy for" her harms contradicts both *Egbert* and *Farah*. *Compare* ECF No. 47 at 11 (emphasis added), *with Egbert*, 596 U.S. at 498 ("[S]o long as Congress or the Executive has created a remedial process that it finds sufficient . . . the courts cannot second-guess that calibration by superimposing a *Bivens* remedy"), *and Farah*, 926 F.3d at 502 ("[E]ven remedies that provide no compensation for victims and little deterrence for violators . . . trigger the general rule that, 'when alternative methods of relief are available, a Bivens remedy generally is not.'" (citations omitted)). The Court should therefore hold that the alternative remedies and other special factors identified in the Agents' opening brief preclude extension of the *Bivens* remedy here. *See* ECF No. 36 at 17-21.

### III.    Plaintiff Cannot Bear Her Burden on Qualified Immunity.

Finally, Plaintiff attempts to defeat Agent Stuart's assertion of qualified immunity by way of non-existent fact disputes and inapposite caselaw. Her arguments fail for three reasons. First, citing *Pearson v. Callahan*, Plaintiff improperly argues that the Agents bear the burden of showing that Agent Stuart has not violated clearly established law. ECF No. 47 at 12 (citing 555 U.S. 223, 238-39 (2009)). But *Pearson* does not say this. *Pearson* contains no discussion of

6

evidentiary burdens at all. As the Eighth Circuit has articulated, the correct standard is that the plaintiff "bears the burden of showing that the law is clearly established," even at the pleading stage. *Lewis v. City of St. Louis*, 932 F.3d 646, 649-50 (8th Cir. 2019) (reversing denial of motion to dismiss based on qualified immunity where the plaintiff failed to clearly allege the violation of a clearly established right).

Second, Plaintiff argues that hypothetical fact disputes preclude a finding of qualified immunity. This is not so. The Eighth Circuit has held that "[w]hether certain actions violate clearly established law is the archetypal question of law," and none of Plaintiff's purported fact disputes prevent the Court from reviewing her Complaint to determine whether she has *alleged* a violation of clearly established law. *Est. of Walker*, 881 F.3d at 1060; *see also Lewis*, 932 F.3d at 649-50 (requiring Plaintiff to specifically allege which clearly established rights and laws each Defendant personally violated). And, as demonstrated in the Agents' motion to dismiss, qualified immunity applies because Plaintiff has not shown that clearly established law imposed a duty to prevent Agent Gasperoni's use of force under the specific circumstances alleged—which include the Complaint's allegation that Agent Gasperoni provided no warning (ECF No. 1 ¶¶ 27, 41, 58, 109, 144) and its conspicuous omission of any allegations regarding the duration of the use of force and the feasibility of intervention. *See Nance v. Sammis*, 586 F.3d 604, 612 (8th Cir. 2009); *Krout v. Goemmer*, 583 F.3d 557, 565 (8th Cir. 2009) (considering duration of incident in failure-to-intervene case).

Third, Plaintiff incorrectly asserts that *Perry v. Woodruff Cnty. Sheriff Dep't by & through Barker* clearly establishes the law governing Agent Stuart's conduct. 858 F.3d 1141 (8th Cir. 2017). *Perry* is distinguishable. To begin with, unlike this case, *Perry* did not involve a claim that an officer failed to intervene. Rather, it arose from allegations that a police officer

(Wolfe) "joined in" another officer's (Clark's) "excessive use of force" by ramming her knee into a suspect's back and restraining his arms, "even when she knew that [the plaintiff] did not commit a crime, threaten Clark's safety, or resist arrest." *Compare id.* at 1146 *with* ECF No. 47 at 7 (describing Plaintiff's claim as "a *Bivens* claim for failure-to-intervene in violation of the Fourth Amendment"). Thus, the legal standards governing Officer Wolfe's conduct were not the same as those applicable to Agent Stuart. *Cf. Hollingsworth v. City of St. Ann*, 800 F.3d 985, 990-92 (8th Cir. 2015) (analyzing claims for excessive force and failure to prevent excessive force separately); *Nance*, 586 F.3d at 612 (setting forth separate legal standard for failure to intervene claims). In short, *Perry* is irrelevant to the qualified immunity issue here.

Even if the Court were to evaluate Agent Stuart's conduct under *Perry*, that case's holding offers no support to an argument that Agent Stuart violated Plaintiff's clearly established rights. In *Perry*, the Eighth Circuit held that Officer "Wolfe's actions constituted a Fourth Amendment violation *because she joined Clark's excessive use of force*" despite knowledge of Plaintiff's harmlessness and emphasized that Wolfe used force *after* "view[ing] the entire interaction between [plaintiff] and Clark." *Perry*, 858 F.3d at 1145-46 (emphasis added). Given the lack of allegations that Agent Stuart either (a) shot Mr. Slay or (b) used force on Mr. Slay *after* witnessing his shooting by Agent Gasperoni, *Perry* offers no support to a claim that Agent Stuart violated clearly established law.[3]

---

[3] Plaintiff's allegation that Agent Stuart "grabbed" Mr. Slay before Agent Gasperoni used deadly force does not alter this conclusion. That force was both *de minimis* (*see* ECF No. 36 at 25) and used *before* the fatal interaction between Mr. Slay and Agent Gasperoni. *Cf. Perry*, 858 F.3d at 1145-46 (finding a Fourth Amendment violation when officer used force *after* witnessing "the entire interaction" between an officer who used excessive force and a suspect).

## Conclusion

For the reasons stated above and in their opening brief, the Agents' motion to dismiss should be granted. Plaintiff's Counts I, II, and III should be dismissed against Agent Gasperoni, as should all claims against Agent Stuart.

Dated: April 15, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, Jr.
Director
Civil Division, Torts Branch

PAUL E. WERNER
Senior Trial Counsel
Civil Division, Torts Branch

*/s/ Jacob A. Bennett*
JACOB A. BENNETT
NY Bar # 5753744
Trial Attorney
U.S. Department of Justice
Civil Division, Torts Branch
Constitutional & Specialized Tort Litigation
175 N. St. NE, Room 7.1815
 Washington, DC 20002
Phone: (202) 451-7745
Facsimile: (202) 616-4314
Email: Jacob.A.Bennett@usdoj.gov
*Attorneys for DEA Agents Stuart and Gasperoni*

**<u>CERTIFICATE OF SERVICE</u>**

        I hereby certify that on this the 15th day of April 2024, a true and correct copy of the foregoing document was filed with the Court using the Court's CM/ECF systems and was served upon each attorney of record via ECF notification.

                                */s/ Jacob A. Bennett*

                                _____

                                Jacob A. Bennett
                                Trial Attorney